UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

NAPOLEON J. PICKETT,

                      Plaintiff,

   v.                                             Case No. 24-cv-1580-pp

CO HOLLY, *et al.*,

                      Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2), SCREENING COMPLAINT UNDER 28 U.S.C. §1915A AND DISMISSING CASE**

      Plaintiff Napoleon J. Pickett, who is incarcerated at the Redgranite Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his rights under federal law. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, and screens his complaint, dkt. no. 1.

**I.    Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

      The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

1

On December 27, 2024, the court ordered the plaintiff to pay an initial partial filing fee of $25.07. Dkt. No. 7. The court received that fee on January 31, 2025. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay remainder of the filing fee over time in the manner explained at the end of this order.

**II.    Screening the Complaint**

    A.    <u>Federal Screening Standard</u>

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See <u>Cesal v. Moats</u>, 851 F.3d 714, 720 (7th Cir. 2017) (citing <u>Booker-El v. Superintendent, Ind. State Prison</u>, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atlantic Corp. v.</u>

Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.   The Plaintiff's Allegations

The plaintiff alleges that on September 21, 2024, at 3:30 a.m., he raced to the "E" south bathroom and "en route [he] informed [defendant[ Co. Holly that it was an 'emergency] he seriously need[ed] to urinate[,] [he wouldn't] be able to hold it very long [and] to please open the locked door." Dkt. No. 1 at 2-3. Defendant Holly allegedly told the plaintiff that he could not open the locked door, and Holly then went to the sergeant station and told defendant Sergeant Wilcox what was going on. Id. at 3. The plaintiff states that when Holly returned, he told the plaintiff that Wilcox "told him not to open the door for [him], [he'd] have to wait ten minutes[.]" Id. The plaintiff allegedly told Holly

3

that he could not make it one more minute and repeated his request to open the door. Id. Holly allegedly refused to do so and told the plaintiff to return to his cell. Id.

The plaintiff alleges that as he "squ[i]rmed and tried to move away, as soon as [he] removed his hand away from the tip of [his] penis urine exploded out of [him]." Id. Holly allegedly told Wilcox what had happened, and Wilcox told Holly to open the bathroom door for the plaintiff. Id. The plaintiff says that he then entered the bathroom and urinated. Id. He states that when he was in the bathroom, he heard Wilcox use profanity and say the plaintiff was going to "RH" (presumably, restrictive housing) for urinating on himself. Id. When the plaintiff exited the bathroom, Holly allegedly told him that Wilcox wanted him to clean up his urine on the floor. Id. Defendant Captain Mastricola allegedly agreed that the plaintiff should clean up his urine. Id. The plaintiff states that he cleaned his urine from the floor, as instructed, then sat on the bench across from the sergeant station in his urine-soiled shorts. Id. at 4. He allegedly asked Wilcox what he was supposed to do in that situation when the unit only has public bathrooms, and she replied that he should have gone in the trash can in his cell. Id. The plaintiff states that he informed Wilcox of a potential "P.R.E.A. situation being alleged against [him]." Id.

The plaintiff alleges that at about 3:48 a.m., Mastricola arrived and spoke with Holly and Wilcox. Id. at 4. He states that while they spoke, they laughed and looked at the plaintiff "in a detestable way." Id. Mastricola then allegedly walked over and the plaintiff asked her what he could have done to

4

which Mastrocola replied, "hold it." Id. The plaintiff alleges that Mastricola and Wilcox told him that he would be getting a conduct report for urinating on himself. Id. He states that a Sergeant Salinas (not a defendant) served a conduct report on him later that day. Id. The plaintiff says that he wrote a two-page statement regarding the situation. Id.

The plaintiff alleges that because of this ordeal, he had pain in his side and "major more frequent desire and fear of urinating, and thoughts of [] urinating on [him]self again." Id. He says that the defendants stripped away his dignity as they laughed and forced him to clean up his urine and pay to wash his clothing. Id. The plaintiff states that he is emotionally and psychologically damaged from the incident. Id. For relief, he seeks $350,000 compensatory damages. Id. at 5.

C. Analysis

To establish a constitutional violation with respect to prison living conditions, an incarcerated individual must be able to demonstrate both that (1) the conditions were so adverse that they deprived him "of the minimal civilized measure of life's necessities" (the claim's objective prong) and (2) the defendants acted with deliberate indifference with respect to the conditions (the claim's subjective prong). Townsend v. Fuchs, 522 F.3d 765, 773 (7th Cir. 2008) (quoting Farmer v. Brennan, 511 U.S. 832, 834 (1994)). The necessities of life include "reasonably adequate ventilation, sanitation, bedding, hygienic materials, and utilities." Gray v. Hardy, 826 F.3d 1000, 1005 (7th Cir. 2016) (quoting Lewis v. Lane, 816 F.2d 1165, 1171 (7th Cir. 1987)). "[T]he

5

Constitution does not require that prisoners be comfortable" and "[c]onditions that do not fall below contemporary standards of decency are constitutional." Cunningham v. Eyman, 17 F. App'x 449, 454 (7th Cir. 2001) (citing Delaney v. DeTella, 256 F.3d 679, 682–83 (7th Cir. 2001) and Thomas v. Ramos, 130 F.3d 754, 763 (7th Cir. 1997)).

The plaintiff alleges that he ran out of his cell in the middle of the night and had to urinate, saying it was an "emergency." The bathroom door was locked, and Holly and Wilcox said the plaintiff would have to wait ten minutes for the door to be unlocked. The plaintiff couldn't wait, and he started to urinate on himself. This prompted Wilcox to unlock the door, and the plaintiff entered the bathroom and finished urinating. The plaintiff then had to clean up his urine and pay for his clothes to be laundered. After the incident, the defendants looked at the plaintiff meanly and laughed.

This single—although unpleasant and embarrassing—incident does not constitute a sufficiently serious constitutional deprivation under the Eighth Amendment. See Cunningham, 17 F. App'x at 454 (incarcerated individual who spent four to five hours in soiled clothing after being denied use of the bathroom did not suffer a constitutional violation); Harris v. Fleming, 839 F.2d 1232, 1235 (7th Cir. 1988) (temporary neglect of incarcerated individual's hygienic needs is insufficient to establish an Eighth Amendment violation); Borges v. Boelter, Case No. 21-C-744, 2021 WL 2592849, at *2 (E.D. Wis. June 23, 2021) (incarcerated individual who defecated in his pants and spent an hour in soiled clothing failed to state a claim under the Eighth Amendment).

In addition, the plaintiff's allegation that after the incident the defendants looked at him meanly and laughed does not state a claim for violation of his constitutional rights. See LaCroix v. Neal, Case No. 23-CV-363, 2023 WL 4930125, at *2 (N.D. Ind. July 31, 2023) (officer smirking and speaking rudely to incarcerated individual is not a severe deprivation that amounts to cruel and unusual punishment) (citing Dobbey v Ill. Dep't of Corr., 574 F.3d 443, 445 (7th Cir. 2009) and Lisle v. Welborn, 933 F.3d 705, 719 (7th Cir. 2019) ("Relationships between prisoners and prison staff are not always marked by genteel language and good manners.")).

The court will dismiss this case because the plaintiff fails to state a constitutional claim for which a federal court may grant relief. Although courts generally permit a civil plaintiff at least one opportunity to amend his pleadings, the court need not do so where the amendment would be futile. Runnion *ex rel.* Runnion v. Girl Scouts of Greater Chi. & Nw. Ind., 786 F.3d 510, 520 (7th Cir. 2015). The plaintiff's complaint is thorough in its allegations of facts surrounding this claim, and further amendment would be futile.

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **ORDERS** that this case is **DISMISSED** under 28 U.S.C. §§1915(e)(2)(B) and 1915A(b)(1) because the complaint fails to state a claim. The court will enter judgment accordingly.

7

The court will document that the plaintiff has incurred a "strike" under 28 U.S.C. §1915(g).

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$324.93** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden at Redgranite Correctional Institution, where the plaintiff is confined.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. See Federal Rules of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. See Fed. Rule of App. P. 4(a)(5)(A).). If the plaintiff appeals, he will be liable for the $605 appellate filing fee regardless of the outcome of the appeal. If the plaintiff seeks to proceed on appeal without prepaying the appellate filing fee, he must file a

8

motion *in this court.* See Fed. R. App. P. 24(a)(1). The plaintiff may be assessed another "strike" by the Court of Appeals if it concludes that his appeal has no merit. If the plaintiff accumulates three strikes, he will not be able to file a case in federal court (except a petition for *habeas corpus* relief) without prepaying the full filing fee unless he demonstrates that he is in imminent danger of serious physical injury. Id.

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Rule 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2). Any motion under Rule 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 30th day of May, 2025.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**